ROBERT W. VAN BRUNT v. JOHN V. LYNCH.

*Highways—Estoppel.*

1. A legally laid out and established highway does not lose its character as such by. the erection and maintenance of a gate across it, for a time, by an adjoining land-owner, nor is he or his grantees thereby estopped from claiming it as a public highway.

2. The admitted fact that the strip of land adjoining plaintiff's land, the use of which for highway purposes he disputes, has been included in a legally laid out and established highway, is held to defeat his recovery in a suit against defendant for trespass in passing over it.

3. The above head-notes are designed as a key to the *two* questions decided, which are so connected with the facts of, the case as to render an examination of the *entire* opinion essential to its correct understanding.

Error to Berrien. (O'Hara, J.) Argued July 9, 1889. Decided October 11, 1889.

Trespass. Defendant brings error. Reversed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*Lawrence C. Fyfe,* for appellant.

*N. A. Hamilton,* for plaintiff.

LONG, J. This is an action of trespass *quare calusum* brought in a justice's court, and certified to the circuit court of Berrien county on plea of title.

The *locus in quo* is described as the north-east quarter of the north-east quarter of the north-west quarter of section 35,

in township 4 south, of range 19 west, Berrien county.

The plaintiff was in possession of these lands at the time of the alleged trespass, and claimed under a land contract from Reuben D. Parker, dated November 18, 1887.

The contract described the land as above, and, immediately following the description, contained the following:

"Said second party hereby expressly taking said land subject to the saving clauses and reservations set forth in a deed given to said Parker, and which deed was recorded in the office of the register of deeds of Berrien county, Michigan, January 24, 1868, Liber 31 of Deeds, page 128."

Plaintiff claims to have taken possession of the lands in controversy by doing some plowing thereon in the fall of 1887.

It appears that one Josephus Gard took up from the government the west half of section 35, and on March 30, 1833, conveyed to Joseph Gard the north-west quarter of that section; and that Joseph Gard and wife conveyed to Leicester M. Olds, George W. Olds, and Lester M. Olds, on August 12, 1865, the 10 acres of land first described, being the north-east quarter of the north-east quarter of the north-west quarter of said section 35; this deed to the said Olds containing the following reservation:

"Reserving, nevertheless, unto the said parties of the first part, their heirs and assigns, forever, for a highway, a strip of land two rods wide along the north line of the above described land."

The Olds subsequently deeded this 10 acres of land to Reuben D. Parker, said deed containing the same reservation as the deed from Joseph Gard and wife to them, reserving this two rod strip of land for a highway.

It appears that on July 15, 1870, Mr. Gard platted this north-west quarter of section 35, as Gard's addition to the

village of St. Joseph, which plat was duly certified and recorded on October 10, 1870, as follows:

It appears that the defendant, on March 6, 1879, obtained a deed of conveyance from Abel W. Wells and wife of the north-west quarter of north-east quarter of north-west quarter of said section 35, being lot No. 2 of the above plat, and was in possession of it at the time of the alleged trespass, his dwelling-house being situated on the north end of that lot, and had lived there some 10 or 11 years at the time this controversy arose.

It will be seen that this plat covers the whole of the north-west quarter of said section 35, the plaintiff's and defendant's lands together being the north half of the north-east quarter of the north-west quarter of the section, and both pieces being owned by Joseph Gard at the time of the making of the deed to the Olds containing the reservation above.

After defendant, John V. Lynch, went into possession of his 10 acres, under the deed from Wells, he continued to use this two-rod strip of land as a passage or highway from his land to the Niles road, which runs north and south along the east line of plaintiff's land. Defendant has used this strip for passage to the Niles road ever since he went upon the land, sometimes three or four times a day, and claims that it is his principal way to go to the village of St. Joseph, by way of the Niles road.

This action is brought in trespass against defendant for passing over this two-rod strip of land.

It appears that Mr. Thomas H. Botham purchased this lot 2 from Mr. Gard in 1865, and that he got out to the Niles road by way of this two-rod strip of land across the north end of lot 1, and at that time it was the only way to reach the Niles road, and the only way to the village; that Mr. Botham and a Mr. Morrison at one time had a lease of the land now owned by plaintiff, and also of the ten acres immediately north of it. This lease ran from November 1, 1874, for seven years, and it appears that during a portion of this time they put a fence across this two-rod strip next the Niles road, to keep the cattle from going in on their lands, but that during this time the two-rod strip was used for ingress to, and egress from, these lots 1 and 2; that after Mr. Botham sold lot 2 the parties went over this two-rod strip to the Niles road, and then to the village; that after Mr. Lynch, the defendant, went into possession of lot 2, he complained of the gate being there, and it was taken away; and that thereafter the defendant was in the continuous use of this strip for travel to the Niles road up to the time of the commencement of this suit.

It appears that, after the plat was made and recorded as above described, Gard, Crane, and Duncan streets were opened for public travel, and that the defendant thereafter had, and now has, a way opened through Gard, Crane, and

Duncan streets to the village of St. Joseph, though by those streets it is some 20 rods further than the way by this two-rod strip and the Niles road, but defendant has no way of getting out to the Niles road except through this strip. There seems to have been no objection to the defendant passing over this two-rod strip until the plaintiff made the objection, after he claimed lot 1 under his land contract.

The defendant derives his title through Mr. Botham. The half-mile road, named "Botham Street" in the plat, was never opened nor worked west of the west line of lot 1, while that part of the road east of this line was used only by those occupying or working lot 2 to reach the Niles road from September 25, 1865, to January 29, 1875, and during which time a small amount of public road-tax was expended in work on this part. The portion of this street west of lot 1 was never in condition for travel by teams, there being a ravine crossing it on the north line of defendant's land to the westward of his house.

It appears that in 1866 a public highway four rods in width was established by the commissioner of highways of the township, commencing at the north-west corner of said section 35, continuing east along the north line of said section for a distance of one-half mile, where it opened into the Niles road. This four-rod road included the two-rod strip in dispute. This two-rod strip is also included in the plat of Botham street made by Joseph Gard in 1870, and duly filed and recorded, so that the defendant, when he entered into possession of lot 2, not only found the street platted as Botham street, eastward from his lot to the Niles road, but also found it laid out as a public highway across the north end of his land, and extending eastward to the Niles road, though a fence with a gate was put across it at the entrance into the Niles road.

It appears that in 1885 it was sought to discontinue this road known as "Botham Street," but the court below found,

and we think, under the evidence, very properly, that these proceedings were irregular and void.

The cause was tried in the court below without a jury, and the court made certain findings of fact and conclusions of law.

The facts as above stated are not much in dispute, and are substantially as found by the court below. From these facts the court below found the following conclusions of law:

"1. The reservation in the deed from Gard to the Olds was not intended to secure a private right of way to remaining lands of the grantor.    *    *    *    *    *    *    *

"2. Once the highway was established, either by the township authorities or by his own dedication, Gard and his assigns had the right to travel over it, and their neglect to do so, if it worked a discontinuance of the highway, will forever estop them from setting up any claim to the right originally reserved.

"3. The proceedings aimed at a discontinuance of the highway in 1885 were void.    *    *    *    Although but 40 rods were used for travel between 1866 and 1875, and then only by Mr. Botham, it was yet a public highway until the erection of the fence and gate. Up to that time he had a right to use it as a public highway, but he was not compelled to, and the act of fencing it must be considered as not only a closing of the road to the public generally, but as a relinquishment of his own rights as one of the public. Whatever effect such act would have upon the rights of others, he and his assigns are bound by it.

"4. Even if the rights of Mr. Botham, acquired by way of prescription, had not lapsed when he became the lessee of lot 1, the complete interruption over the way for one or two months after the sale to defendant · will defeat the claim of the latter to a prescriptive right. The period it has been traveled without interruption is not great enough.

"5. The establishment of 'Lake View Avenue' [called on the plat 'Gard Street'] had caused the way in dispute to become no longer a way of necessity, and the defendant herein, when he finally began to use the way across lot 1, did so under a license, and this license not having been revoked during the time Mr. Botham remained in possession of lot 1, the creation of an easement by prescription could not have been commenced during such period.

" 6. The defendant is bound by the act of his grantor, and Botham himself having closed the road to the public, the latter was not at liberty to call it a public highway whenever it might suit his convenience, or occasion a sale of his premises. When the defendant purchased, there was but one public highway along lot 2, and nothing has occurred in the mean time to constitute another. Neither the Olds nor Parker owned any adjoining lands at the time of their respective transfers. The reservations in the deed of one and contract of the other may be disregarded.     *     *     *     *     *

" 7. The staking off of two rods two years ago, when the plaintiff was but an ordinary tenant, cannot be tortured into a continuing license, and it does not appear that permission or license was given since plaintiff last took possession."

Judgment is given for plaintiff against defendant for six cents damages, and costs. From this judgment defendant brings the case to this Court by writ of error.

If it is true that the reservations in these various deeds gave the defendant no right of passage over this two-rod strip of land, and that the public had acquired no rights there of a public highway by user, yet the conceded facts upon this record are that a public highway was laid out there in 1866, and that this public highway included this two-rod strip. It is conceded that—

" All these proceedings for the laying out of this highway are in due and legal form."

The court below, however, concluded as a matter of law that because Mr. Botham, from whom defendant derived his title to lot 2, put a fence with a gate there across the east end of this road next to the Niles road, he, as well as his grantees, are now estopped from making claim of a public highway there. In this the court was in error.

The fact that Mr. Botham kept and maintained a fence across a portion of this highway for a few months, which had been duly laid out and established by the proper township authority did not deprive it of its character as a public highway, and this act would not estop Mr. Botham nor his grantees from claiming it as a public highway.

The fact being conceded upon the record that this two-rod strip is included in this highway, and that this highway is duly and legally laid out and established, must defeat the plaintiff's recovery in this action, irrespective of the other questions raised. It appears that this was regarded as a public highway up to the year 1885, when an attempt was made to discontinue it; but upon this record it is conceded that this proceeding was a nullity, by reason of the defects appearing therein.

We need not discuss the other questions raised, as it is wholly unimportant whether the reservations in the deeds gave the defendant the right of passage over this two-rod strip, or whether he had gained a right, in common with the public, to such passage by user, or had a prescriptive right there.

It follows that the judgment of the court below must be set aside, and judgment entered here in favor of the defendant, with costs of both courts.

The other Justices concurred.