# First National Bank *v.* Tyson.

*Bill in Equity to enjoin Public Nuisance.*

1. *Public nuisance; encroachment upon sidewalk in the erection of a building will be enjoined.*—The encroachment upon a sidewalk in a city by the erection thereon of columns in front of a building adjacent to the said sidewalk, constitutes a public nuisance for the abatement of which, or to enjoin the erection and maintenance of which, a bill in equity can be maintained.

2. *Same; when bill can be maintained by private citizen.*—A private citizen who sustains an injury in tne erection and maintenance of a public nuisance, different in degree and

kind from that suffered by the general public, can maintain a bill in equity to enjoin the erection and maintenance of such public nuisance.

3. *Easement of view a valuable right and can be preserved.*—An easement of view or prospect from every part of a public street is, like light and air, a valuable right of which the owner of a building abutting on a street can not be deprived by an encroachment upon the street by a coterminous or adjacent proprietor; and to enjoin the erection and maintenance of a building which would obstruct the enjoyment of such right, the owner of a building can maintain a bill in equity.

4. *Same; municipal authorities can not grant the right to maintain public nuisance.*—The authorities of a municipality have no power to authorize the encroachment upon a sidewalk by the erection and maintenance thereon of a part of a building; and it is not a condition precedent to the maintenance of a bill to enjoin the erection and maintenance of such obstruction, that the complainant, who owned the adjacent or coterminous building had applied, without success, to the authorities of the city for relief.

5. *Public nuisance; fact that complainant is guilty of obstructing sidewalk no reason why he can not maintain bill to abate public nuisance.*—It is no defense to a bill, filed to enjoin the erection and maintenance of an obstruction upon a sidewalk adjacent to the complainant's property, that the building owned by the complainant itself encroaches upon said sidewalk.

6. *Bill to enjoin public nuisance; when plea bad for duplicity.* Where a bill is filed to enjoin the erection and maintenance of a part of a building which encroaches upon a sidewalk in a city, upon the ground that it was a public nuisance and obstructed the complainant's enjoyment of light, air and view, a plea which sets up that the complainant who owned the adjacent building consented to the encroachment upon the sidewalk, and which further sets up as a defense that the complainant was not entitled to have the light, air and view come to his building from that part of the street in front of defendant's building, to which the defendant has a fee, is bad for duplicity.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE.

The bill in this case was filed on July 20, 1901, by

the appellee, A. P. Tyson, against the First National Bank of Montgomery. The bill averred in substance as follows: 1. Complainant was a resident citizen property owner, and tax payer in the city of Montgomery. 2. The defendant bank was organized under the laws of the United States, and located in said city. 3. Commerce street, in said city, was dedicated to and accepted by the public more than 50 years ago, and was used by the public for street purposes; that it was laid out of uniform width for its entire length between the building lines, and built up on both sides with business houses, all of which, with two exceptions, extending to the building line only or receding therefrom. 4. Complainant owns a three-story brick building on the east side of the street, known as number 12 Commerce street, used as a bank and office building, and extending up to the building line of the street, but not encroaching thereon. 5. The defendant bank owned a lot on the same side of the street, known as number 14 Commerce street, immediately adjoining complainant's lot and building, upon which the bank was constructing a six-story brick and stone building. 6. The bank intended to place in front of its building four stone columns, as ornaments, to extend from the sidewalk, 16 feet in height, and 2 feet, more or less, beyond the established building line into the street; that the bases for these columns had already been laid and the columns cut; that complainant had protested against said encroachment on the highway, but, notwithstanding, the said bank intended to place said columns in front of its building. Upon advice of counsel, complainant averred that the said encroachment upon the highway is a public nuisance, and if completed and placed in position as contemplated "said encroachment will greatly damage your orator beyond that which is common to the public generally by injuring and depreciating the value of your orator's property and by destroying the symmetry of your orator's building along the highway, which is valuable, and by obstructing the light, air and view necessarily ensuing therefrom, and by depreciating the rental value of your orator's property, in that the view of persons going south along said highway

north of your orator's building will be cut off from your orator's building." It was further averred that complainant's valuable tenants would leave the building, and had threatened to leave, if the columns encroached on the highway.

In the prayer of the bill the complainant asked "that a preliminary injunction may issue from your honor's court, directed to the said The First National Bank of Montgomery, Alabama, its officers, agents or servants, architects and contractors in charge of said building of the said First National Bank, enjoining and restraining it, its officers, agents and servants, architects and contractors in charge of said building as aforesaid from placing said stone columns on said highway, as aforesaid; and from placing any encroachment whatsoever on said highway which is intended to be permanent, and upon a hearing thereof, your orator prays that said injunction may be made perpetual, and that said The First National Bank be perpetually enjoined from placing any stone columns, blocks, steps, or any encroachment intended to be permanent upon said highway, in front of its said building as aforsaid, and that it may be ordered to remove any encroachment which it has already caused to be placed on said highway of a permanent nature in front of its said building as aforesaid."

On August 2, 1901, the judge of the city court awarded a temporary injunction. On August 8, in the further argument of the cause, the judge vacated the order granting the temporary injunction. Thereupon on the same day, upon petition addressed to the Chief Justice of the Supreme Court, a temporary restraining order was granted, upon the consideration of the application of the complainant for a temporary injunction, and on August 10 the Chief Justice of the Supreme Court granted a temporary injunction.

The respondent filed a sworn answer, in which he set up three pleas. The answer and pleas were amended after the issuance by the Chief Justice of the temporary injunction. It is unnecessary to set out at length the averments of the answer. The pleas as amended were as follows: Answering the bill, and by way of first

plea, defendant averred on information and belief that if the line between the street and abutting property owners is as contended by complainant in his bill, then complainant's building itself extends into and encroaches upon Commerce street, and if defendant's columns would encroach into the street and constitute a public nuisance, then complainant's building also encroaches on the street and constitutes a public nuisance, and complainant is *in pari delicto* with defendant, and the special injury alleged in the bill to complainant's light, air and view will be done to the part of his building which itself constitutes a public nuisance; but defendant denies that its building will obstruct the light, air or view from the building of complainant, and denies that complainant is entitled to have light, air and view to his building across lands in which the defndant owns the fee, and over which the complainant and the public generally have only an easement of passage.

Further answering, and by way of second plea, defendant says that before beginning the construction of its building, it called upon the proper authorities of the city of Montgomery to point out and establish the true line between its property and the street, and it was its *bona fide* intention to conduct itself in a lawful manner in reference to the position and construction of its building, and with that view called upon the city authorities to point out the line; that the city failed and refused to point out the line, and thereupon, out of abundance of caution, it applied to the city for, and the city granted, permission to it to project the base of its building 26 inches beyond the property line and to set up on such base four stone columns to project 22 inches beyond said property line; that the sidewalk in front of the buildings of complainant and defendant is wide and spacious and the placing of the columns in front of defendant's building would not in any manner interfere with or injure the rights of the public to ready and convenient passage along the sidewalk; that to this time, defendant had only erected in front of its building now in course of construction, a foundation flush and level with the sidewalk upon which the bases

for the columns are to stand, which bases will extend 1 foot 10 inches above the level of the sidewalk, and 26 inches from the front of the main building in the course of construction; that the columns are to be 16 feet high sitting on such bases, and each of them at the bottom will extend only 22 inches beyond the present front wall of the building and taper to the top, which will only be 18½ inches from the line of the front wall; that the column nearest complainant's building will be 1 foot 10 inches from the north wall thereof, and not nearer; that the city of Montgomery now has and for years has had authority generally to control and regulate the streets of the city for any and all purposes, and to alter, widen, cut down, extend or otherwise alter or improve all streets or sidewalks; and upon advice of counsel defendant says that, even if the columns extend into the street, the city had authority to grant defendant permission to extend them as above described to be intended by this defendant; upon information and belief, defendant says that every city in Alabama, including Montgomery, for years past, and long prior to the enactment of the present charter of Montgomery, and many of its previous charters, the power of municipal corporations to grant permission to abuttors on streets to place permanent ornaments in front of their buildings, encroaching into the public highway, has been exercised under such authority by municipalities, as the city of Montgomery has to control its streets as above recited; that this was well known and a matter of public notoriety and history at the time of the enactment of the present charter of Montgomery, as well as when its previous charters were enacted, and said city had frequently exercised the power granting like and more extensive permissions than the permission above described, and under such permissions many buildings have been constructed and are now standing in the city of Montgomery, including the two on Commerce street next south of complainant's building, whose ornaments attached to their fronts encroach into the highway, if defendant's columns would encroach into Commerce street; wherefore, upon advice of counsel, defendant says it was the intention of the legislature, and

it had the power to confer upon the city of Montgomery, and did confer it, the power to grant such permission as has been granted to defendant, and whether defendant was acting under said permission or under its rights as the owner of the land upon which the columns are to be constructed depends upon where the line of the property of this defendant and Commerce street is; that defendant owns the fee to the center of Commerce street in front of its building, subject alone to the right of complainant and the public generally to pass to and fro along the street, and complainant had no other right or rights in reference to the part of said street in front of defendant's building to which it owns the fee.

Further answering, and by way of third plea, defendant says that its building is planned to be six stories, to be erected, and being erected at large cost, for banking and office purposes; that defendant had made contracts for the completion of the building by September 1st, which defendant alleges on information was known to complainant when he made objection to said columns; that after the building of the basement of the building and the construction of the foundation for the bases of the columns, and not before, complainant objected to the columns, and defendant thereupon exhibited to him the plans of the building which showed fully and precisely the proposed location of the columns, which plans had been prepared months previously and were the basis of a contract between the defendant and John W. Hood & Co. for the construction of the building and the purchase of the columns at a large price, which defendant says on information and belief was well known to complainant; that defendant explained to complainant the position the columns would occupy and discussed the contemplated change of the plans so as to omit said columns therefrom; that complainant then withdrew all objections to defendant proceeding with its plans in placing said columns in position, and complainant when he withdrew said objection informed defendant that since he had seen the plans he was satisfied that placing the columns in such position as planned would not injure him or his build-

30c

ing, but would add to the value of his buliding; that, as was well known to complainant, no part of the six stories of the building was at that time constructed above the basement, which was at that time flush and on a line with the sidewalk; that if complainant had then insisted on his objection, defendant could have yielded thereto at that time without any very great expense, but that a continuance of the plans of defendant for the main part of its building called for the expenditure of $50,000 or more, as was well known to complainant when he withdrew his objection; that some time elapsed between the withdrawal of the objections and the continuance of the construction of the building, and defendant, relying upon complainant having withdrawn his objections to the columns, proceeded with the building above the first story and completed all the walls thereof, and not until after defendant had done this did complainant in any manner renew his objections to the columns; that the columns are to stand in front of and as a part of the first story of the building, and the first story will be incomplete and unfinished without them, would present a rough and unkept appearance, and the columns are, as was well known to complainant when he withdrew his objection and when he renewed it, a material and necessary part of the building and a part of the support of the same; that after the renewal of the complainant's objection, it would have cost the defendant $10,000 and caused it to make a breach of its contract with John W. Hood & Co. for the construction of the building, and with tenants to whom it had let space therein, to have removed the first story so as to comply with the wishes of complainant in refraining from proceeding with said plans so that said columns would be a necessary part thereof. Wherefore, defendant says, on advice of counsel, that complainant has estopped himself from renewing his objection and maintaining this bill, and that, even if complainant would suffer any injury special to himself, and not common to the public, from said columns, he, by his acts, conversations and conduct above described, well knowing all the facts, has induced

[First National Bank v. Tyson.]

and permitted defendant to go to great trouble and expense, and, before a renewal of his objection, has induced and permitted defendant to proceed with its building on a plan including the columns to a point at which it would have been a great expense to change the same so as to omit the columns or so as to place them further back from the street, if indeed it would not have been impracticable and impossible to do so without a violation of its contract with Hood & Co., and its prospective tenants; that if complainant would suffer any injury from the columns being placed in position as planned, it would be infinitesimal in comparison with the immediate, proximate and necessary injury which defendant would suffer from the granting of an injunction; whereby, on advice of counsel, defendant says complainant has estopped himself from insisting upon any special injury by reason of the columns, without the averment and proof of which special injury complainant cannot maintain the suit. And defendant further says, on advice of counsel, that complainant is not entitled to have light, air and view come to his building from that part of the street in front of defendant's building to which the defendant has the fee, and that the only easement to which the public or complainant is entitled over that part of the street to which defendant has the fee, is the right of passage to an fro.

The defendant also demurred to the bill upon nineteen grounds, which were in substance as follows: 1. There is no sufficient averment of intention to obstruct Commerce street or to create a public nuisance. 2. Complainant does not show that he will suffer irreparable damage. 3. It does not appear but that the city of Montgomery consented to the erection of the columns. 4. It is not shown that the columns will be beyond or off of the property of the bank. 5. It is not shown where the building line is, or that defendant intended to go beyond its own property into the street. 6. No obstruction of the street is shown, and no more is shown than a mere encroachment for the prevention of which the court is without jurisdiction at the suit of a private party. 7. Complainant has a complete and adequate remedy at law for depreciation in the value of his building, loss in rents, and destruction of

its symmetry, has no right to light, air or view from the part of Commerce street upon which the bank's building fronts, and any obstruction to it *damnum absque injuria,* for which he has no right of action. 8. No injury special and peculiar to complainant, and not com mon to the public generally, is shown. 9. It is not shown that the complainant has applied to the proper authorities of the city to prevent the alleged nuisance.

The complainant filed exceptions to these pleas upon the ground that the same were insufficient at law and presented no facts upon which the complainant could join issue. The defendant moved to discharge the temporary injunction upon the following grounds: "1. Said injunction was granted without authority of law. 2. Said Chief Justice had no jurisdiction to grant said injunction. 3. In this cause an injunction was granted by Hon. A. D. Sayre, and was in force from August 2d, to August 8th, 1901, at which last date the order granting said injunction was set aside upon the release by defendant of all damages, and said injunction was then, by Hon. A. D. Sayre, refused. Wherefore, defendant says that no such case was presented as authorized said Chief Justice to act in the premises, and grant said injunction." There was also a motion made to dissolve the injunction.

The cause was submitted upon the exception of the complainant to the three pleas filed by the defendant upon the motion to discharge and dissolve the injunction, and upon the demurrers to the bill. The chancellor rendered a decree overruling the motions to discharge and dissolve the injunction and the demurrer to the bill and sustained the exceptions to the several pleas. From this decree the defendant appeals, and assigns the rendition thereof as error.

WATTS, TROY & CAFFEY, for appellant.—1. To entitle a private citizen to maintain a bill to enjoin the commission of a public nuisance, he must show a material damage which is irreparable and special and peculiar to himself, and not suffered by the public in common with him.—*Mayor v. Rogers,* 10 Ala. 47; *Ala., etc.,*

*Co. v. Ga. Pa.*, 87 Ala. 157; *Crommelin v. Coxe*, 30 Ala.
328; *Perry v. New Orleans*, 55 Ala. 421; *L. & N. v.
Mobile*, 124 Ala. 162, 166; *Columbus v. Witherow*, 82
Ala. 190, 193-4; *Whaley v. Wilson*, 112 Ala. 631, and
120 Ala. 504; *Adler v .Metropolitan, etc., Co.*, 138 N.
Y. 179; 14 Ency. Pl. & Pr., 1137, 1138, 1145.

2. Without express provision to the contrary, dedi-
cation of land for a street gives only an easement of
passage over it to the public, and the fee of the center
to the street remains in the abutting proprietor.—*Perry
v. N. O., etc., R. Co.*, 55 Ala. 424; *M. & M. v. Ala. Mid.*,
116 Ala. 57-8.

3. Every injury done to another by the use of one's
own property is *damnum absque injuria*, unless the in-
jured party has acquired a right in the nature of an
easement of such property.—*Moody v. McClelland*, 39
Ala. 51; *Myer v. Hobbs*, 57 Ala. 175; *Taylor v. Arm-
strong*, 24 Ark. 104-5; *Packet Co. v. Sowels*, 50 Ark.
471-2.

4. Decrease in money value or income producing
capacity of propery is not irreparable injury.—*Rouse
v. Martin*, 75 Ala. 515; *Rosser v. Randolph*, 7 Porter
245; *Winter v. City Council*, 93 Ala. 541; *Zabriskie v.
Jersey City*, 13 N. J. Eq., 314, 318; *Morris v. Pruden*,
20 N. J. Eq., 530, 537; *Dana v. Valentine*, 3 Metc.
(Mass.) 8; *Atty. Gen. v. Nichols*, 16 Vesey, Jr., 342-3;
*Warren v. Brown*, L. R. (1900), 2 Q. B. 722; 2 Story
Eq. Juris., § 925; 1 High Injunctions (3d ed.), § 788;
1 Wood, Nuisances (3d ed.), § 511; 16 Am. & Eng. Ency.
Law (2d ed.), 361.

5. When an abutter has no title to a certain part of
the street, nothing done thereon which merely decreases
the value of his property is an actionable wrong to
him.—*Decker v. Evansville, etc.*, 133 Ind. 493; *Grand
Rapids v. Heisel*, 38 Mich. 62, 68-70; *Indiana v. Eber-
sole*, 110 Ind. 545.

6. Continuous proprietors have no rights to light,
air or view across the lands of each other.—*Ray v. Lynes*,
10 Ala. 63; *Ward v. Neal*, 37 Ala. 501; *Jesse French
v. Forbes*, 129 Ala. 471; *Graves v. Smith*, 87 Ala.
450; *Parker v. Foote*. 19 Wend. 309, 318-19; *Garrett
v. Janes*, 65 Md. 260, 271; *Alred's Case*, 9 Coke, 59;

*Knowles v. Richardson*, 1 Mod. 55; *Butt v. Imperial Co.*, 2 Ch. Ap. 160; *Jenks v. Williams*, 115 Mass. 217; *Turner v. Thompson*, 58 Ga. 268.

7. Easement can only be acquired in three ways; (1) by express grant; (2) by implied grant; (3) by prescription.—Jones on Easements, § 80; 10 Am. & Eng. Ency. Law (2d ed.), 409, 418, 426; 19 *Ib.* 1125-26.

8. In the nature of things, no easement of light, air, or view from the highway can be acquired by adverse use.—*Jesse French Co. v. Forbes*, 129 Ala. 471.

9. An easement of light, air and view by implied grant extends only to what is necessary for the reasonable and comfortable enjoyment of the premises.—*Ray v. Lynes*, 10 Ala. 66; 19 Ency. Law (2d ed.), 115, 120, 121; 10 *Ib.* 424; Jones on Easements, §§ 154-7; *Paine v. Chandler*, 134 N. Y. 385; *Robinson v. Clapp*, 65 Conn. 383, 388; *Morrison v. Marquardt*, 24 Iowa 64; *Bonelli v. Blackmore*, 66 Miss. 136; *McBryde v. Sayre*, 86 Ala. 458, 463; *Williams v. Gibson*, 88 Ala. 232-5; *Nichols v. Luce*, 24 Pick. 102.

10. The *quantum* of light, air, and view to which one is entitled, whether his easement is gained by implied grant or by prescription, is the same; and where the right comes by prescription, it is well settled that it is limited to necessity.—*Warren v. Brown*, L. R. (1900), 2 Q. B. 722; *Back v. Stacey*, 2 Car. & P. 465; *Kalk v. Pearson*, 6 Ch. Ap. Cas., 811; *City v. Tennant*, 9 Ch. Ap. Cas., 212; *Fifty Asso. v. Tudor*, 6 Gray 255; *Atty. Gen. v. Nichols*, 16 Vesey, Jr., 342-3; *Ray v. Lynes*, 10 Ala. 66; 10 Ency. (2d ed.), 424.

O. C. MANER, *contra.*—The encroachment by the erection of the pillars on a public street constitutes a public nuisance and can be abated or enjoined.—*State v. Edens*, 85 N. C. 526; *McCloughry v. Finney*, 37 La. Ann. 31; *Webb v. Demopolis*, 95 Ala. 116; *Costello v. State*, 108 Ala. 45; *Reid v. Mayor and Aldermen of Birmingham*, 92 Ala. 339; *Field v. Barling*, 24 L. R. A. 406; *Flynn v. Taylor*, 14 L. R. A. 556; *Dill v. Board of Education*, 10 L. R. A. 276; *State v. Berdetta*, 73 Ind. 185; *State v. Mobile*, 5 Port. 279; *Cabbell v. Williams*, 127 Ala. 320.

The complainant although a private citizen, being injured by the encroachment on a sidewalk, in a way different from the public in general, can maintain the present bill. It is a well settled principle of law that one sustaining a peculiar injury to himself not suffered by the general public may maintain a bill in equity to have a public nuisance abated.—*Cabbell v. Williams,* 127 Ala. 320; *Douglas v. City Council,* 118 Ala. 599; *Nininger v. Norwood,* 72 Ala. 277; *Kennedy v. Jones,* 11 Ala. 63. "In addition to the rights of the public to maintain a suit in equity for an injunction, private citizens who are specially injured by an obstruction and interested in preventing its continuance, may, upon a proper showing, maintain a suit in equity for an injunction.—Elliott on Roads and Streets (2d ed.), § 665; *Field v. Barling, supra; Dill v. Board of Education, supra; Flynn v. Taylor, supra; Casebeer v. Howry,* 55 Pa. St. Rep. 419.

"An unlawful deprivation of a substantial legal right necessarily implies injury to the party so deprived."

It has been well settled by many well considered cases that an abutter upon a public street has an easement in the street for ingress and egress to and from his premises and also for the free and uninterrupted passage and circulation of light and air through and over such street for the benefit of property situated thereon.—*Storey v. N. Y. Elev. R. Co.,* 90 N. Y. 122; *Lahr v. Met. Elev. R. Co.,* 104 N. Y. 268; *Barnett v. Johnson,* 15 N. J. Eq., 481; *Dill v. Board of Education,* 10 L. R. A. 276; *Field v. Barling,* 24 L. R. A. 406; Elliott on Roads and Streets (2d ed.), § 695.

It has been expressly decided that the municipality except by valid legislative authority (and by this we do not concede that the legislature can authorize a private obstruction to a public street) cannot license or permit any private encroachment on a public highway, and that any private encroachment on a public highway is a nuisance *per se* even though permitted and sanctioned by the athorities of the city.—*State v. Mobile,* 5 Port. 279; *Webb v. Demopolis,* 95 Ala. 116; *Costello v. State,* 108 Ala. 45; *Holle v. Atty. Gen.,* 72 Ala. 411;

*City of Mobile v. L. & N. R. R. Co.,* 124 Ala. 132; *L. & N. R. R. Co. v. M. J. & K. C. R. R. Co.,* 124 Ala. 162; Elliott on Roads and Streets (2d ed.), § 653; *Field v. Barling,* 24 L. R. A. 406; *Flynn v. Taylor,* 14 L. R. A. 556; *Reimer's Appeal,* 100 Pa. St. Rep. 185; *Townsend v. Epstein,* 49 Atl. Rep. 629.

HARALSON, J.—The cause was submitted for decree on the pleadings, the exceptions of complainant to the three pleas filed by the defendant, the motions to discharge and dissolve the injunction, and on the demurrer to the bill, accompanied by the several affidavits filed by the complainant and defendant.

It may be stated broadly, since it seems to be everywhere settled in this country, that a building or other structure of like nature, erected on a street—which includes its sidewalks—without the sanction of the legislature, is a nuisance; that public "highways belong from side to side and from end to end to the public," and they are entitled to a free passage along any portion of it, not in use by some other traveller, and there can be no rightful permanent use of the way for private purposes.—Elliott on R. & S., § 645. This court has said: "The public have a right to passage over a street, to its utmost extent, unobstructed by any impediments, and any unauthorized obstruction which necessarily impedes the lawful use of a highway is a public nuisance at common law."—*Costello v. The State,* 108 Ala. 45. Again, it is said: "Any permanent obstruction to a public highway, such as would be caused by the erection of a fence or building thereon, is, of itself, a nuisance, though it should not operate as an actual obstacle to travel, or work a positive inconvenience to any one. It is an encroachment upon a public right, and as such, is not permitted to be done by the law, with impunity."—*State v. Edens,* 85 N. C. 526.

It is again well settled, that a municipal corporation cannot license the erection or commission of a nuisance in or on a public street. "A building," says Dillon, "or other structure of like nature, erected upon a street, without the sanction of the legislature, is a nuisance,

and the local corporate authorities of a place cannot give a valid permission thus to occupy streets, without express power to this end conferred on them by the charter or statute. The usual power to regulate and control streets has even been held not to authorize the municipal authorities to allow them to be encroached upon by the adjoining owner, by erections made for his exclusive use and advantage, such as *porches* extending into the streets, or flights of stairs leading from the ground to the upper stories of buildings, standing on the line of the streets. The person erecting or maintaining a nuisance upon a public street, alley or place, is liable to the *adjoining owner* or other person who suffers *special* damages therefrom."—2 Dillon's Mun. Corp., § 660, and authorities there cited; *State v. Mayor,* 5 Port. 279; *Webb v. Demopolis,* 87 Ala. 666; s. c. 95 Ala. 116; *Hoole v. Attorney General,* 22 Ala. 194; *Costello v. The State, supra; Douglas v. City Council,* 118 Ala. 599.

There can be no question but that the erection of the proposed pillars by defendant in front of its building on the street, and which are to extend, as admitted, twenty-two inches beyond the west line of said building onto the sidewalk, is a public nuisance, to abate which, the public might maintain a bill.—*Reed v. Mayor,* 92 Ala. 34; 1 Dillon on Mun. Corp., § 374; Elliott on R. & S., §§ 664, 665; authorities *supra.*

It is also well understood, that, in addition to the right of the public to maintain a suit in equity for an injunction against the erection and maintenance of a public nuisance, a private citizen who sustains an injury therefrom, different in degree and kind from that suffered by the general public, may maintain a suit in equity to enjoin it.—*Cabbell v. Williams,* 127 Ala. 320; *Mayor v. Rodgers,* 10 Ala. 36, 47; Elliott on R. & S., § 665. As to the injury being irreparable, or not capable of full and complete compensation in damages, as is sometimes said to be the requirement in case a private citizen complains to abate it, Mr. Elliott observes in the section referred to, that "the phrase, 'irreparable injury' is apt to mislead. It does not necessarily mean, as used in the law of injunctions, that the injury is be-

yond the possibilities of compensation in damages, nor that it must be very great. And the fact that no actual damages can be proved, so that in an action at law the jury could not award nominal damages only, often furnishes the very best reason why a court of equity should interfere in cases where the nuisance is a continuous one."—*Ogletree v. McQuaggs,* 67 Ala. 580.

On the same subject Mr. Wood states, that "By irreparable injury, is not meant such injury as is beyond possibility of repair, or beyond possibility of compensation in damages, nor necessarily great injury or great damage; but that species of injury, whether great or small, that ought not to be submitted to on the one hand, or inflicted on the other, and which, because it is so large on the one hand, or small on the other, is of such constant and frequent occurrence that no fair or reasonable redress can be had therefor in a court of law."—2 Wood on Nuisances, § 778 and n.; 3 Pom. Eq. Jur., § 1349; *Whaley v. Wilson,* 112 Ala. 630.

The bill alleges, "that said encroachment [of the erection of said pillars on the sidewalk] upon said highway is a public nuisance, not only infringing upon the rights of the commonwealth of Alabama, but if same are completed and placed in position, as now contemplated by the First National Bank, said encroachment will greatly damage your orator beyond that which is common to the public generally, by injuring and depreciating the value of your orator's property, and by destroying the symmetry of your orator's building along the highway, which is valuable, and by obstructing the light, air and view necessarily ensuing therefrom, and by depreciating the rental value of your orator's property, in that the view of persons going south along said highway north of your orator's building, will be cut off from your orator's building." He also avers that the tenants in his building are valuable to him, and some of them have informed complainant, that if said columns encroach on said highway, or if any part of said building of defendant encroaches on said highway, they will no longer remains his tenants. Here is averment of special damage to complainant, apart from that which may be suffered by the public at large.

It appears that the bases of the columns proposed to be erected in front of defendant's building are outside of the west wall of the main structure to which they are expected to be attached, and as is averred and not denied, "are to extend from the sidewalk, sixteen feet in height, more or less, and are to extend two feet more or less (22 inches seems to be the real extent) beyond the established building line on said highway, into and upon the street." It is wholly immaterial, it may be added, whether these columns are designed to be for ornament or utility, or whether defendant will be prejudiced more by the temporary injunction against their erection, than complainant might be, if it had not been granted.

We try the case on this appeal, on the pleadings as they are presented, in advance of any evidence taken in the cause. Whether the evidence when taken will, on submission of the case for final disposition, sustain the averments for relief or not, we are not given to know. It is a case as presented, as the court below held, and we think properly, where, everything considered, the complainant was entitled to his injunction, and its continuance, to await the final disposition of the cause. *Harrison v. Yerby*, 87 Ala. 185.

The defendant, it may be conceded, owns as it claims, to the center of the street in front of its building, and its right to the use of its property in any way it pleases, subject only to the easement of the public along the street, as a thoroughfare of travel and commerce; but it denies to complainant the right to light, air and view, except from that part of the street immediately in front of his property. So far as light and air are concerned, the subject has been much discussed, and may be taken as well settled, but the question of view, if distinguishable from these, has not often arisen. The easement of light and air is placed, on what would seem to be good reason, and certainly on authority, along with the easement of access, the one no more important than the other, except in degree. This easement of access, says Mr. Elliott, "is so far regarded as private property that not even the legislature can take it away and deprive the owner of it without compen-

sation. In New York and in most of the States in which the question has arisen, the abutter has an easement in the light and air over the street, and 'above the surface there can be no lawful obstruction to the access of light and air, to the detriment. of the ' abutting owner,' " In support of the text, note 1, many authorities from different courts are cited, including the case of the *N. Y. Elevated Railroad Co. v. Fifth Nat. Bank,* 135 U. S. 432. In the case last cited the court say: "The owners of lands abutting on a street in the city of New York have an easement of way and of light and air over it; and through a bill in equity for an injunction, may recover of the elevated railroad company full compensation for this easement; but in an action at law, cannot, without the defendant's acquiescence, recover permanent damages, measured by the diminution in value of their property, but can recover such temporary damages only as they have sustained to the time of commencing action."

From the well considered case of *Barnett v. Johnson,* 15 N. J. Eq. 481, we quote approvingly what we consider to be especially applicable to the case in hand, that there are "Two classes of rights, originating in necessity and in the exigencies of human affairs, springing up coeval with every public highway, and which are recognized and enforced by the common law of all civilized nations. The first relates to the public passage, the second, subordinate to the first, but equally perfect and scarcely less important, relates to the adjoining owners. Among the latter is that of receiving from the public highway light and air    *    *    *    When people build upon the public highway, do they inquire or care who owns the fee of the road-bed [or street]? Do they act or rely on any other consideration except that it is a public highway, and they. the adjacent owners? Is not this a right of universal exercise and acknowledgment in all times and in all countries, a right of necessity, without which cities could not have been built, and without the enforcement of which they would soon become tenantless? It is a right essential to the very existence of dense communities.    *    *    *    It is a

right founded in such an urgent necessity that all laws and legal proceedings take it for granted. A right so strong that it protects itself, so urgent that, upon any attempt to annul or infringe it, it would set at defiance all legislative enactment and all judicial decision." *Dill v. Board of Education,* 10 L. R. A. 276; *Field v. Barling,* 149 Ill. 556. s. c. 24 L. R. A. 406.

In the case of *Dill v. Board of Education, supra,* touching the rights of parties to streets dedicated to public use, the court said: "If we inquire what those rights are, we find that they are twofold: *first,* a right of access from the abutting property, and a passage to and fro over it in all its extent; and, *second,* a right of light, air, prospect and ventilation. These rights are quite distinct from each other, and capable of being separately exercised and enjoyed. The right of light, air and ventilation may be enjoyed fully without the least exercise of the right of access and passage. That this right of light, air, prospect and ventilation exists is clearly established by the authority of this and other States."—*Hallock v. Scheyer,* 33 Hun. 111.

It is difficult to understand, why an easement of view from every part of a public street, is not, like light and air, a valuable right, of which the owner of a building on the street, ought not to be deprived by an encroachment on the highway by a coterminous or adjacent proprietor. The right of view or prospect, is one implied, like other rights, from the dedication of the street to public uses. As was well said by the learned judge below in respect to this right, "It seems to be a valuable right appurtenant to the ownership of land abutting on the highway, and to stand upon the same footing, as to reason, with the easement of motion, light and air, and to be inferior to them only in point of convenience or necessity, and that an interference with it is inconsistent with the public right acquired by dedication. The opportunity of attracting customers by a display of goods and signs is valuable, as I have no doubt the streets of any city in the world will demonstrate." As to these and all other matters brought forward, the in-

[Collier v. Carlisle.]

junction should await the decision of the cause when tried for final decree, on pleadings and proof taken.

The demurrer on the ground that it is not alleged in the bill that complainant had applied without success to the authorities of the city of Montgomery for relief, is wanting in merit. He had a right to file the bill without reference to any action taken by the city.—*Douglass v. City Council of Montgomery,* 118 Ala. 611. The demurrer as to any of its grounds was properly overruled.

From what has been said, it will appear that the first and second pleas were properly held to be without merit. See *L. & N. R. R. Co. v. M. J. & K. C. R. R. Co.,* 124 Ala. 162; *Webb v. Demopolis,* 95 Ala. 116, respectively, as to each of these pleas. The court held, that the third plea, as originally filed was good; but as amended was bad for duplicity,—citing Story Eq. Pl. 653. Without considering the third plea as originally filed, we concur with the court below, that as amended, it was bad for duplicity. There was no error in overruling the motion to discharge and dissolve the injunction, and, finding no reversible error in any of the rulings of the court below, let its decree be affirmed.

Affirmed.

Tyson, J., not sitting.