(123 So. 25)

**WHEELESS v. BURNS. (8 Div. 55.)**

Supreme Court of Alabama. May 23, 1929.

Rehearing Denied June 27, 1929.

Nathan, Nathan & Nathan, of Sheffield, for appellant.

Andrews, Peach & Almon, of Sheffield, for appellee.

SAYRE, J. Appellant and appellee own properties fronting on Alabama avenue in the city of Sheffield. Their properties are separated by a 16-foot alley running east and west. Appellee was building a garage on his property when appellant filed her bill praying for a mandatory injunction to prevent the erection, averring that the building contemplated and then in process of erection encroached upon Alabama avenue by several feet. At the hearing on pleading and evidence appellant's bill was dismissed. On this appeal appellee does not deny that the bill states a proper case of equitable interference (Bank v. Tyson, 133 Ala. 459, 32 So. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46); but he denies the facts alleged, and the contention between the parties turns exclusively upon a correct solution of the issue made by the competent evidence.

Appellant's bill describes appellee's property as bounded on the south by an alley, on the west by an alley, and on the northeast—the lot is triangular in shape—by Alabama avenue, and as to the facts thus far stated there is no dispute. But appellee denies that his building encroaches upon the avenue. It is averred, and not denied, that appellee's lot is described in his chain of title and the muniment under which he holds by reference to the Treveres map of the city of Sheffield on record in the office of the judge of probate; but that map, a tracing of which appears in the record, shows no dimensions and is drawn to such a scale—300 feet to one inch—that no accurate description of any lot shown by it can be predicated upon it alone. The dimensions of appellee's lot are alleged in the bill, but the alleged dimensions are denied in the answer, nor are they to be proved, so far as the record shows, except by reference to maps, of which a number show the lot and its surroundings, and by the testimony of civil engineers who speak as to the authority of the maps and in explanation of their lines. Moreover, a close examination of the Treveres map discloses such irregularities and discrepancies as between lots of the same dimension—as the other evidence shows—as to make it a most uncertain guide to the exact dimensions of lots, though their relative positions are shown well enough. The foregoing facts corroborate the inference to be drawn from some of the testimony—and, for that matter, not denied—that the true Treveres map was and is the original map of the city of Sheffield drawn to a much larger scale for the Sheffield Company and now in the keeping of that company. That map was not produced in evidence. Precisely what it shows we do not know. The Treveres map of

record in the office of the judge of probate is not an exact copy, evidently, but is a reproduction on a much smaller scale.

The testimony of the witnesses and the other maps in evidence—not the probate court Treveres map—make some facts very clear, viz.: That appellee's lot is bounded south and west by 16-foot alleys; that its northeastern boundary is coterminous with the southwestern property line of Alabama avenue; that it lies within the so-called business district of Sheffield; that the lots in that part of the city measure 25 by 120 feet; that Alabama avenue, branching out from Montgomery avenue (a north and south highway) at a point south or southeast of appellee's lot, curves to the northwest; that Alabama avenue is shown by the maps to be 100 feet wide; and that appellee's lot is opposite to a large triangular open space created by the conjunction of Alabama avenue, Raleigh avenue running north and south, and Sixth street running east and west. This curvature of the avenue and the open space created by the conjunction of the two avenues and the street account, no doubt, for the confusion and uncertainty as to the exact location of the northeast line of appellee's lot. Appellee claims, and was at the filing of the bill improving his lot on the theory, that it had a boundary, at its southeastern extremity, of about 8 feet on Raleigh avenue. The Treveres map of the probate office shows there a point instead of the claimed frontage of 8 feet on Raleigh avenue; but when the facts already stated are considered in connection with the fact that a line of that map, if laid upon the ground without its scale reduction, would cover more than 2 feet—a fact which the act of the Legislature referring to the Treveres map recorded in the probate office for a description of the corporate limits of the city of Sheffield (Acts 1892–93, p. 144) cannot change—little significance can be attached to the fact that the map referred to shows a meeting of the southern and northeastern boundary lines of appellee's lot in what appears to be a point rather than the frontage claimed on Raleigh avenue.

The various maps in evidence show Alabama avenue to be 100 feet wide. The measurements across the avenue made by appellant's engineers show an encroachment by appellee's building variously estimated at 7 to 4 feet, thus illustrating the inherent uncertainty of the method of proof adopted by appellant's witnesses. Those made by appellee's engineer show that the building leaves the avenue with a width of about 8 inches more than 100 feet. These differences have arisen out of the fact that the two schools of engineers, so to speak, start their measurements from different points on the opposite side, roughly speaking, of the avenue. The question of fact here is: From what point on the opposite side precisely, as we look at the maps, should the measurement be started?

Block 43 lies opposite to appellee's lot. The southwest corner of that block is at the junction of its western property line on Raleigh and its southwestern line on Alabama avenues, and is very nearly opposite to the southeast corner of appellee's lot. At that point the avenues lie approximately at an angle of 45 degrees. The property lines of block 43 subtend, therefore, an angle of approximately 135 degrees, the property line of Raleigh running north and south; that on Alabama, northwest and southeast. The effort is to locate the corner in question by reference to an original memorial stone at the northwest corner of block 43, the correct location of which is not denied. The maps show, lying between the original stone and the corner sought, two lots, 1 and 2, 25 feet each, lying south of the stone, and a fractional lot to the south of them, that is, lot No. 3 of irregular shape with a fractional frontage on Raleigh avenue, between them and the corner sought, the frontage of which is in dispute—in dispute because the parties in measuring the width of Alabama avenue would start from different points on block 43, or, rather would locate the southwest corner at different places. Appellee's engineers locate the southwest corner of block 43 by measuring 61 feet to the south from the memorial stone at the northwest corner—this, because the "block book map," which showed dimensions and which, we infer from their testimony, is a reproduction by blocks of the original Treveres map owned by the Sheffield Company, showed the figures 61 and 59. Buried in the ground, at the south end of 61 feet, they found an old stake, which they accepted as locating the southwest corner of the block, and from that measured across Alabama avenue to appellee's lot. From the statement we have made it will be seen that, according to the testimony noted by appellee, lot 3 of block 43 has a frontage of 11 feet on Raleigh avenue, whereas the witnesses for appellant, using a scale on the Treveres map of the probate office, assign a frontage of about 20 feet to lot 3 and so locate the southwest corner 70 feet south of the memorial stone at the northwest corner, and, therefore, between 4 and 5 feet nearer the opposite side of Alabama avenue. But we are quite sure that scaling measurements from the Treveres map of the probate office cannot be relied upon to settle the controversy between these parties, and that, so far as concerns measurements, recourse must be had to the original Treveres map in the keeping of the Sheffield Company, not to contradict the probate office map, but to show what in fact it means, or perhaps it would be more accurate to say that the Sheffield Company's map is properly used to supply information not furnished by the probate office map. Appellant objects, as we understand, not on the ground that the original Treveres map is not produced, but on the ground that the court has the right to look only to the Treveres map of record in the probate office.

We have in effect indicated our view of appellant's proposition as to this question. To repeat, the Treveres map of the probate office is a reproduction on a smaller scale of the original Treveres map, so reduced, evidently, for convenience of recording. The scale of the probate office map is such that it is impossible to take accurate measurement from it, nor does it show any measurements. Of necessity, therefore, recourse must be had to the original Sheffield Company's map when measurements are in dispute. So considering the case presented, we are at the unavoidable conclusion that, to say the least, appellant has not established her contention by that clear and convincing proof which in such cases equity requires.

The decree is affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.