John H. Wall, et al. <br> vs. } Eq. No. 8236. <br> Abraham Eisenstadt, et als.

May 15, 1930.

BAKER, J. Heard on bill, answer and proof.

The complainants are seeking a permanent injunction to prevent the respondents, Eisenstadts, from building an addition to the front of their garage, which is used for the public storage of automobiles.

The Eisenstadts occupy a dwelling which is situated at the northeasterly corner of Hope and Constitution streets in the Town of Bristol. Immediately east of their house is the garage, the front of which they propose to extend southerly.

The complainants' property, upon which is a small cottage house where they live, is immediately east of and adjoining the premises of the respondents, Eisenstadts.

The complainants take the position that the proposed addition to the garage will extend said building some 11½ feet into what they claim is properly part of Constitution street and therefore a public highway. They bring the bill as individuals and urge that they will suffer special damage if the proposed extension is permitted.

The respondents, on the other hand, set up, first, an agreement with the Town of Bristol, bearing date December 7, 1926, permitting the contemplated addition, with certain conditions attached thereto; second, an estoppel against these complainants; third, that if the extension does project some distance into what is Constitution street, nevertheless the complainants are not entitled to maintain their bill because they can show no special damage; and, finally, that as a matter of fact, the contemplated structure will be entirely on their own land and not in any part of the highway.

In this case it is undisputed that no question of abandonment of the highway, or any portion thereof, enters into the matter. No proper steps, by those in authority, to bring about such a result have ever been taken. It is clearly the law in this state that the highway having once been established the public right cannot be abandoned, except in the manner provided by law, and no rights can be obtained therein by non-user of adverse possession.

*Knowles* vs. *Knowles*, 25 R. I. 325.

Assuming, for the purpose of argument, that the place where the proposed extension of the garage is to be erected be part of the highway, then, in the opinion of the Court, the respondents cannot avail themselves, by way of defence to the bill, of the agreement of December 7, 1926. It seems well settled by the weight of authority that municipalities have no power to authorize obstruction of streets or highways for merely private purposes.

*Elliott on Roads and Streets*, 3d ed., Vol. 2, Sec. 836;

*Montgomery* vs. *First Nat'l Bank*, 133 Ala. 459.

The rights over public highways in this state are specifically granted for

certain definite purposes by the General Assembly under the general laws of the state, and it is clear that the authority of a municipality is limited to those matters referred to in the statutes.

The respondents next urge by way of defence that the complainants are estopped from questioning the respondents Eisenstadts' title to the premises involved because the property of both parties extends back to a common ancestor. There is no question as to this fact. In view, however, of the Court's position on the remaining questions in the case, it seems unnecessary to discuss this matter at length. As a general proposition of law, it is probably sound, but in the opinion of the Court it does not apply to such a situation as is presented by the facts here.

The other ground of estoppel urged by the respondents is that the complainants have not offered to throw a certain portion of the yard in front of their house into Constitution street and that, as a matter of fact, by keeping a fence along the occupation line, they are maintaining an obstruction in the highway of the same kind as the extension to the respondents' garage.

It seems reasonably well settled, however, that if a person is maintaining a nuisance in a public highway, it does not necessarily bar him, if he can show special damage, from maintaining an action against another person who is doing the same thing.

> *Langsdale* vs. *Bonton*, 12 Ind. 467;
> *Miller* vs. *Schenck*, 78 Ia. 372;
> *Van Brunt* vs. *Lynch*, 76 Mich. 455;
> Vol. 29 C. J., p. 622.

See, however, a discussion of this question in

> *People* vs. *Stover*, 145 Ap. Div. (N. Y.) 259, 203 N. Y. 613.

Undoubtedly the complainants, in order to maintain this bill, are required to show by a preponderance of the evidence that the proposed extension, assuming it to project into the highway, will cause them special and individual damage.

Ordinarily, where there is an obstruction or a nuisance in a public highway, the redress is left to the proper public authority.

> *Bowden* vs. *Lewis*, 13 R. I. 189;
> *State* vs. *White*, 18 R. I. 473.

The complainants claim that the testimony shows that their property will be depreciated and that their easement of light, air and prospect in the highway will be affected. The complainants placed on the stand a real estate expert from Providence who testified that in his judgment their property would be depreciated about one-third if the proposed extension to the respondents' garage was constructed, even making an allowance for the fact that the complainants themselves might have to throw certain of their property into the highway.

On the other hand, the respondents presented evidence through an expert, living in Bristol, who took the position substantially that the complainants' property had already been depreciated as much as it would be by the existence of the garage as it now is and that the extension would cause no further depreciation.

The matter of light, air and prospect relates chiefly to the complainants' sun-parlor, which is the room nearest the respondents' garage and the proposed extension. Undoubtedly the complainants have certain easements of light, air and prospect in the highway.

> *Vol.* 1, *Lewis on Eminent Domain,* pp. 178, 191;
> *Barnett* vs. *Johnson*, 15 N. J. Eq. 481;
> *Steere* vs. *Tucker*, 39 R. I. 531.

In the latter case, the Court in this state has made it clear that the interference should be substantial before the Court will grant relief. Some of the cases refer to the easement as applying to the front of the premises, where they abut upon the street, and it would seem reasonable that one whose house stands back some distance from the street line ought not to prevent an adjoining owner from building to his line merely by claiming an easement of light, air and prospect.

After giving the testimony on this point careful consideration, the Court has come to the conclusion that the complainants have not proved by a fair preponderance of the evidence such substantial individual damage and injury growing out of the proposed extension of the respondents' garage as would enable them to maintain, as individuals, this bill.

The remaining issue has to do with the question as to whether or not the addition to the garage will be entirely on the respondents' land or will project some 11½ feet into the highway. On this point the parties introduced a very large number of exhibits and traced the history of the Town of Bristol back to its original settlement.

The complainants urge that the proper width of Constitution street is about 5 rods or 82½ feet, whereas, apparently, the highway as laid out is approximately 64 feet wide. The complainants base their contention on what is known as the Grand Articles and the Grand Deed to the original settlers of the town, bearing date 1680 or 1681; a survey, known as the Woodbury survey, made about 1680; a highway deed (Exhibit 6) bearing date 1690 and the testimony of Mr. Perry, a civil engineer.

It is undisputed that Constitution street was formerly known as Queen street. Making use of the ancient deeds above referred to and other conveyances and descriptions of property in the town records, and starting from certain points at the town common, Mr. Perry has run lines which would tend to show that the proposed extension of the respondents' garage would be about 11½ feet in Constitution street, assuming the width of said street to be 82½ feet, and that said street lines would pass within a few feet of the front of the complainants' house and, extending westerly, would pass directly through a portion of the dwelling house in which the respondents now live.

The evidence shows that it is the respondents' desire to extend the front of their garage to what might be termed the occupation line, conforming on one side to their own dwelling house and on the other side to the complainants' fence line.

The respondents' attack the construction placed by the complainants upon these ancient documents and surveys and further contend that the Perry survey is not correct or accurate. They also rely on the descriptions in the chain of title relating to the property in question, to a certain partition suit in 1710 and to the condition of Constitution street as actually laid out and existing for many years.

One difficulty about the situation arises from certain references in the highway deed of 1690. This instrument conveys in substance in one portion all the streets as they are now laid out between the two creeks (probably referring to the streets running north and south), and, further, also nine streets that lie nearly east and west crossing the aforesaid streets, seven whereof are five rods wide. One of these seven was undoubtedly Queen street.

It is very possible that it was the intention of the original settlers to have the above streets, including Queen

street, five rods in width. The testimony introduced, with such reasonable deductions as may be drawn therefrom, seem to make it quite clear, however, that as actually laid out Queen street, or Constitution street as it now is, was never actually 82½ feet wide.

Votes of the town meeting and town council reveal that from the very earliest times there was uncertainty and confusion about the maintaining of fences and the fencing in of private property. This doubtless affected the width of the highways as actually laid out and used.

Further, an examination of the deeds in the chain of title as presented by the respondents' exhibits shows beyond much dispute that some house or building has been standing on the northeasterly corner of Hope and Constitution streets approximately in the same position as the respondents' dwelling from the earliest settlement of the town. This obviously assists somewhat in fixing the north line of Constitution street.

Richard Smith, one of the earliest settlers, received this property about 1680-1681 and apparently built upon it some ten years before the highway deed was executed. In addition, the probate judge who made partition of this estate about 1710 was one Byfield, who was an original proprietor, and among others joined in executing the highway deed above referred to. The respondents argue with considerable force that he would not have been likely to participate in a partition which included part of the highway, he having personal knowledge of the matter. Also, in 1747, a deed from Nathaniel Pierce et al. to John Lindsey conveys the west end of a dwelling house, beginning at the middle of a post in the middle of the front entry and running westerly to Hope street 45½ feet.

A consideration of the description of this property by metes and bounds from the earliest times reveals that from 1680 to 1798 it bounded 56 feet on Hope street. On the last mentioned date the owner conveyed 10 feet of the northerly part of the property on Hope street and since that date the distance on Hope street has been 46 feet. The line on Constitution street includes all of the respondents' property and part of the complainants.

The actual occupation and use favors the respondents' contention. It is not disputed that the present dwelling house of the respondents has stood practically unchanged for certainly upwards of 100 years, it having been erected some time between 1772 and 1823. This house was built on the site of earlier ones. Along the edge of the sidewalk on Constitution street past the property of the parties is a row of trees of such dimensions that obviously they have stood there many years. Mr. Perry testified that actual conditions on the ground have been unchanged for over 60 years and that the travelled way has never been wider than it now is, to his knowledge.

From the deeds, from surrounding circumstances, and from the use and occupation, the weight of the testimony supports the respondents' claim that the north line of Constitution street is actually the occupation line and should be so held. If the original proprietors intended Constitution street to be 82½ feet wide, and there is some support for that position, it may be that the additional width should come from the property on the south side of the street. It seems difficult to arbitrarily claim that it should be widened entirely to the north. The evidence seems contrary because the northeasterly corner of Hope and Constitution streets appears to be more or less fixed.

An examination of the Perry survey raises serious doubt in the Court's mind as to whether it should be accepted in toto, in view of the matters already referred to, as definitely placing the north line of Constitution street. In the first place, it is based largely on the Woodbury survey of 1680. While this map or survey is found in the town records, it contains no reference to any deed of streets or highways, nor does any deed contain reference to it. There are on the survey no angles or monuments and no scale is mentioned, although Mr. Perry testifies that a scale can be raised. The starting point of the Perry survey is, in the opinion of the Court, not as clear and definite as it should be, taking into consideration that it affects practically all the property in the town. The surveyor starts at the Common, using descriptions in deeds to aid him, and has reference to a stone at one corner of the Common which has since been removed.

It has apparently been settled in this state that in determining the original location of a way where several plats thereof or other evidence relating thereto are conflicting, the actual layout or use must govern.

*Matteson* vs. *Whaley*, 20 R. I. 412, 694.

In the above case, at page 413, the Court says:

"We often find, however, that old roads were not built according to their platted lines and that it would result in great damage to private rights to hold strictly to a plat." See also *Aldrich* vs. *Billings*, 14 R. I. 233.

The Court is of the opinion that where different theories are presented relating to the layout of an ancient highway, the one will be accepted which more nearly conforms to the actual layout.

After careful consideration, therefore, the Court has come to the conclusion that the occupation line on the north side of Constitution street should be considered the line of the highway, and that, therefore, the premises upon which the respondents are seeking to erect the extension of their garage belongs, in fact, to the respondents.

For the reasons above set out, the prayers of the bill are denied and the bill is dismissed.

For complainants: R. M. Greenlaw.
For respondents: Knauer & Fowler.