WILLIAM C. STEERE *vs.* JESSE L. TUCKER.

DECEMBER 18, 1916.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(*1*)   *Encroachment on Highway.   Public Nuisance.   Injunction.*

An encroachment upon a public highway is a public nuisance and to entitle an owner of land fronting on the highway to abate such nuisance by injunction, he must show that he has suffered injury peculiar to himself or some special injury other than that in which all the general public share alike, and that the difference between the injury to him and the injury to the general public is one of kind and not merely of degree.

(*2*)   *Public Nuisance.   Air and Light.*

A bill to abate an encroachment upon a public highway, brought by an owner of land fronting on the highway, charged that the alleged encroachment prevented complainant from using and viewing, and from obtaining light and air to which he was entitled by reason of his location on a public highway. *Held*, that it could not be sustained as to the allegation as to air and light where it appeared that respondent's building was 40 feet from the nearest

portion of complainant's land and upwards of 65 feet away from the nearest part of complainant's house, no inference being possible from its size or location that it interfered in any degree with the circulation of the air or with the light.

*(3)   Using and Viewing.*

*Held*, further, that the general use of the highway by complainant for travelling back and forth was only a part of the general public use to which all were entitled, and if there was any actual encroachment, complainant suffered no special injury differing either in kind or degree from that suffered by the general public so far as the general use of the highway was concerned, there being·no evidence that the alleged encroachment interfered in any way with complainant's right of access to his property.

*(4)   Right of View.*

*Held*, further, that there was nothing to show that complainant could not, from the front of his land upon the highway, see everything upon the highway that he wished to see or that would be of value to him to see or that the view of his land from the highway was cut off in any appreciable degree,· but if there was any substantial interference with view it was an interference which affected the general public using the highway in the same way only in slightly less degree than it affected complainant, and there was no proof that complainant was carrying on any business or doing anything upon his land where view was of special value to him or where the cutting off of his view of the highway or of the view of his premises by travellers caused him any special injury.

BILL IN EQUITY seeking injunction against encroachment on highway.   Heard on appeal of respondent and sustained.

PARKHURST, J.   This is a bill in equity for an injunction brought in the Superior Court holden within the county of Providence;   the averments of the bill, in substance, are as follows:

The complainant is the owner of a certain described parcel of land located in the town of Glocester, in said county, on the southerly side of the Glocester Turnpike Road, so-called, at its intersection with a crossroad, so-called, leading southerly from said Turnpike Road, bounded northerly by said Turnpike Road and westerly by the crossroad.

The respondent is the owner of a certain described parcel of land, at the intersection of said roads, bounded northerly on said Turnpike and easterly on said crossroad.

The respondent has constructed on his premises at the intersection of said roads a building which, as the complainant avers, he has so built as to encroach "upon the highways and sidewalks of the same upon the northerly and easterly sides of the aforesaid premises, that is to say, upon said Glocester Turnpike Road and said crossroad, notwithstanding your orator repeatedly protested against the same and objected thereto and requested the respondent to cease from so doing."

The bill further avers "that in consequence of said encroachment upon the said public highways, your orator is prevented and will be permanently prevented, if said obstruction is allowed to continue, from using and from viewing and from obtaining light and air from a considerable portion of said highways by reason of said portion, constituting a large space or area of said highways, being covered by said building, and he is and will be permanently prevented, if said obstruction on said highways is allowed to continue, from viewing the said highways in their entirety from his premises aforesaid, by reason of his view being cut off and obstructed" . . . "and from obtaining the full use, benefit, and enjoyment of said highways, and from obtaining the light and air which would naturally come to his, the complainant's said premises." . . .

It is further averred that complainant repeatedly requested the respondent to desist from continuing the construction of the building, to take it down, etc., and that respondent refused to comply with such requests.

The bill prays for an injunction against such encroachment and for a mandatory injunction requiring the removal of the building so as to give to the complainant the rights of view, use, etc., claimed in the bill.

The respondent demurred to the bill generally for want of equity; and on the special grounds that it does not appear by the bill that the complainant sustains "any injury different in degree and kind from that suffered by the general public;" and that the complainant has no easement

of light and air, prospect or view in the highways mentioned in the bill.

After a hearing on this demurrer, before the Presiding Justice of the Superior Court, the demurrer was overruled, the Justice in his rescript having held "that the modern law recognizes an easement in an abutting owner to light and air from the street, so that he is specially damaged by any encroachment thereon;" and also having held "that the encroachment is alleged as covering a large space or area on the highway and is therefore alleged as being of sufficient importance to cause equity to take jurisdiction."

The respondent then answered the bill, admitting the averments regarding title and ownership of the respective parcels of land and their locations as set forth in the bill; denying the alleged encroachments upon the highways and averring that respondent's building is wholly constructed and located within the limits of his premises; averring that the complainant approved of the construction of the building; and denying that by reason of the location of said building he has obstructed the complainant from using, viewing or obtaining light and air from said highways, or either of them, etc.

Thereafter the following issues of fact were settled and agreed upon by the solicitors for the parties, viz. :—

"FIRST. Did the complainant in October, 1912, approve of the construction of the respondent's building as alleged in the third paragraph of the answer ?

"SECOND. Has the respondent encroached upon the highways and sidewalks of the Glocester Turnpike and Cross-road as alleged in the third paragraph of the bill ?

"THIRD. Did the complainant repeatedly protest to the respondent against the encroachment of the respondent's said building upon said highways ?

"FOURTH. Has the complainant been and will the complainant be obstructed from using and viewing and from obtaining light and air from the said highways by reason of the respondent's building ?"

Thereafter the cause was heard by the Presiding Justice of the Superior Court upon said issues of fact, upon oral testimony, April 13–15, 1915; the justice filed his rescript May 25, 1915, sustaining the complainant's right to an injunction; and thereafter on June 4, 1915, final decree was entered, as follows:

"This cause came on to be heard upon the motion of the complainant for the entry of a final decree, and thereupon, upon consideration thereof, it is ORDERED, ADJUDGED and DECREED that the said respondent has encroached upon the highway described in the bill of complaint, that is to say, upon the Glocester Turnpike Road and the crossroad so described, and has prevented the complainant from using and viewing and from obtaining light and air from a considerable portion of said highways by reason of said encroachment, and from obtaining the free use, benefit, and enjoyment of said highways, and from obtaining the light and air which would naturally come to his, the complainant's premises, but for the existence of the said encroachment and obstruction, and, therefore, it is further ORDERED, ADJUDGED and DECREED that the said respondent, Jesse L. Tucker, be and he hereby is permanently enjoined from proceeding with the construction of his building described in the bill of complaint, and from further encroaching upon and obstructing said highways; and it is further ORDERED, ADJUDGED and DECREED that the said Jesse L. Tucker be and he hereby is ordered to obviate and abate the nuisance caused by his said building by removing his said building, obstruction and encroachment upon said highway and by moving his said building on the Glocester Turnpike Road back to the line of wall appearing to the north of his said building and extending into the cellar of his said building, being a distance of four and $\frac{7}{10}$ (4.7) feet at the northeasterly corner of his said building and eight and $\frac{7}{10}$ (8.7) feet at the southeasterly corner of his said building, or by cutting off from his said building the encroachment upon the highway as aforesaid; and it is

further ORDERED, ADJUDGED and DECREED that the complainant recover of the said respondent, Jesse L. Tucker, his costs in this cause, the same to be taxed by the Clerk."

From this decree the respondent has duly appealed and prosecuted his appeal to this court and the cause is before this court upon said appeal.

The reasons of appeal raise in detail questions as to the several findings of fact in the decree and claim that such findings of fact are not supported by the evidence; and further claim that the decree is erroneous in law for several reasons. In our view of the case it will not be necessary to set out the reasons of appeal in detail.

In considering all of the evidence with regard to the location of the lines of the highway called in the bill the Glocester Turnpike Road, and also called in the evidence the "Powdermill Turnpike Road," we have found great difficulty in coming to any conclusion as to the true lines of said highway, as also did the Superior Court. The highway at the place in question passes through the village of Harmony, in the town of Glocester, and is part of the public highway which leads in a general northwesterly direction from the city of Providence to the village of Chepachet (also in Glocester), then in a general westerly direction to the line of the State of Connecticut. It is a very ancient highway; it appears from the evidence that the road was relaid in 1789, as shown by a "Report of the Committee for relaying the Road from Killingly, in Connecticut," made to the General Assembly, October 14, 1789. (See Schedules, R. I., Feb. 1786 to Oct. 1791; October, 1789 (2d Session), p. 10 *et seq.*) It appears from this report that the road was relaid "from Connecticut Line Easterly through Glocester, etc., to Providence;" it begins at a "heap of stones in Connecticut Line; then N. 39° E. 28 Rods to the Easterly Side of a Large Rock;" and so on by courses and distances and monuments of the like character, heaps of stones, different trees, etc., in the old fashion of such surveys, throughout its entire length to

Providence. The report concludes with this statement: "And for greater certainty we have erected Monuments and Boundaries on the Southerly and Southwesterly Sides of said Roads; and laid the same Three Rods wide, agreeable to order." This layout was referred to in evidence, and it was freely admitted by both parties to this suit that it was impossible to identify or mark out upon the ground of the road as now existing any of the courses and distances or monuments referred to in this report, so far as they appear to have had reference to the portion of the highway passing through the village of Harmony and bounding the lands of the parties, respectively. Some attempt was made to compare the distances called for in the report with certain measurements made of lands belonging to several successive owners of properties in the village of Harmony on the southwesterly side of the highway; but it was conceded by the surveyors who testified that they could not identify any of the courses and distances or monuments named in the report with anything upon the ground at the time of surveys (December, 1913, in the case of the complainant's surveyor, February, 1915, in the case of the respondent's surveyor).

The complainant through R. S. Mowry, a surveyor, put in a plat, surveyed December, 1913, platted March, 1916, by means of which said Mowry attempted to show a certain line of a stone wall beginning at a corner of a stone wall now in existence and called in the evidence "Riley Steere's Corner," and following a portion of said wall in a southeasterly direction and produced in a straight line for a distance of 511 feet to a certain drill-hole in a rock. This line is shown on the Mowry plat as passing through the front portion of the respondent's building shown on the plat and as being in continuation in a straight line of a portion of a now existing stone wall to the northwest of the respondent's building. It shows the respondent's building as extending 4.7 feet to the northeast of this line at the northeasterly corner of the building, and extending 8.7 feet to the northeast of this line at the southeasterly corner

of said building.  It is attempted to show on this plat that
at the point where this line strikes the northwesterly side of
the respondent's building and for a distance of about 115
feet in a northwesterly direction to the end of the present
existing wall there are remains of an old stone wall continu-
ous with the existing wall in a straight line; and there is
some testimony to show that certain stones from the old
wall now appear in the cellar of the respondent's building at
a distance of about four feet back from the northeasterly
corner of said building.  But it is to be remembered that
this straight line of 511 feet in a southeasterly direction
runs to a drill-hole in a rock or ledge of rocks as a bound or
monument of what the witness Mowry claims to be the true
line of that portion of the highway.  It is to be noted that
according to the evidence this drill-hole was pointed out by
the complainant to his surveyor as a mark or bound in
making this survey, and that there is no evidence in the
record that this drill-hole was ever at any time mentioned
as a boundary mark or corner mark or in any way con-
nected with any survey, plat or layout either of the highway
or of any piece of land.  The only piece of evidence put in
by which it is attempted to identify this drill-hole as a
boundary mark is a deed made in the year 1814 (complain-
ant's Ex. 2) from Daniel Tourtellot to Richard Aldrich of a
certain farm in Glocester bounding on the Turnpike Road
"then westerly as the fence runs on the road till it comes to
Whiteman Tourtellot's land to a *mark in a Rock,* thence
Southerly on said Tourtellot's land," etc.  Some vague
attempt is made by the surveyor to say that he had run out
certain old surveys of lands pointed out to him by com-
plainant and had found certain corners on the road; but
his survey does not show any such lines nor is there any
clear evidence that this drill-hole is to be identified with the
"mark in a Rock" mentioned in the deed of 1814.  We find
nowhere in the record any evidence that this drill-hole was
ever at a corner of any land conveyed, nor does it now appear
to be at a corner of any land now in occupation.  And yet

this surveyor plainly says in his testimony: "I was guided by the drill-hole" and "I hang by that," in speaking of this line of 511 feet, above attempted to be described. It is a curious fact to be noted in reference to this surveyor's testimony that said line of 511 feet so drawn as to cut off the respondent's building and show that it stands in the highway on one corner a distance of 4.7 feet, and on the other corner a distance of 8.7 feet, also cuts off the whole front of the complainant's land as shown by his occupation wall on a frontage of about 150 feet, so that complainant's front wall would be from 10 to 15 feet out into the highway, if this line is correct. But Mowry's plat does not show this; it does not show the occupation lines of the complainant's land on the highway or of the land next adjoining on the east, known as the Harmony Hotel Estate; it simply shows straight lines running to the drill-hole, which, as we have seen, is not shown to be a boundary mark. In fact the drill-hole is shown by one witness to have been made by a stone mason in a ledge of rock near the road, about 1853 or 1854, probably for the purpose of blasting; and that he saw the hole drilled; and this witness and another testified that the boys used it to explode powder on Fourth of July, until they were stopped by the neighbors. And this is not disputed. Again, with regard to the Mowry plat it appears that the northerly line of the highway as drawn thereon is exactly 49½ feet distant from and parallel with the southerly line as delineated on the plat, but shows nothing with regard to occupation walls of owners on the northeasterly side of the road.

The respondent by his surveyor, F. V. Waterman, put in evidence a plat dated February, 1915, which purports to show the portion of the highway and crossroad above referred to with buildings and occupation walls located thereon on both sides of the road, including the respective parcels of the parties and their buildings, and the parcels with walls adjacent to the premises of the parties on the northwest and on the southeast. It shows the same angle

of the wall to the northwest of the respondent's building,. above referred to as "Riley Steere's Corner," and shows a. wall, still said by the surveyor to be in good condition,. extending in a straight line southeasterly toward respond-- ent's land for a distance of about 114 feet; from that point. on the line of the wall is produced in a straight line to the corner of the crossroad, a distance of about 170 feet. This line so produced shows that the respondent's building is. entirely to the southwest of the line and does not encroach upon the highway. This line also, if further produced in a. southeasterly direction as a straight line, would not come to the "drill-hole" which is also shown on this plat, but would be upwards of ten feet northerly of the drill-hole.

It is to be noted that both of these surveys purport to draw a straight line from "Riley Steere's Corner" following the stone wall; the Mowry line cuts through the respond- ent's building and shows a portion of it as encroaching upon the highway and goes on to the drill-hole in a straight line; the Waterman line purports to be a straight line from the same point following the same line of the wall so far as it exists and producing the same line to the corner of the cross- road and showing the respondent's building as not encroach- ing at all upon the highway. It is manifest that both of these plats, so differently locating the same straight line cannot be correct. We cannot find from all the evidence that either of them is correct; but we have already shown that in our opinion the Mowry plat rests upon an unwar- ranted assumption in taking the drill-hole as a monument. As to that, therefore, we are clearly of the opinion that his line is erroneous.

The complainant and several of his witnesses who have been more or less familiar with this portion of the highway for many years previous to the erection of the respondent's building have testified to the existence of a stone wall along the southwesterly side of the highway which ran to some point not very definitely ascertained at or about the location of the northwesterly end of the respondent's building. This

wall they testified was supposed to have been the boundary
of the highway as used or as they understood.　Mowry, the
surveyor, claims to have found sufficient remains of this
stone wall to enable him to get the line thereof in a con-
tinuous straight line with the now existing wall from Riley
Steere's Corner, and continuing to a point near the north-
westerly end of respondent's building and so shows it on his
plat, and then continues on in a straight line to the drill-
hole; as we have already shown, this line is discredited by
the Waterman survey and by the lack of any sufficient
evidence that the drill-hole was a proper monument.　It
appears that this portion of the wall formerly existing and
now partially or entirely thrown down was in part at least a
bank wall or retaining wall and that this portion of the high-
way where the property of the parties is located was built
on a side hill sloping from the north to the south; that this
bank wall was a part of the construction of the road so
built along the slope.　It further appears that this portion
of the road has been raised from time to time in past years
so as to modify the grade which rises beyond to the north-
west and that the soil from the road has encroached upon
this bank wall which has gradually been covered up or
thrown down.

Many years before the present building was erected there
had been several small buildings on the land now owned by
the respondent, viz.: a wheelwright shop fronting toward the
main highway, a shop or saloon for the sale of oysters and
liquor also fronting toward the main highway and near the
corner of the crossroad, and a blacksmith shop at the rear
of the lot, fronting on the crossroad.　It is not claimed that
either of these buildings encroached upon either the main
highway or the crossroad, but they appear to have been
slightly back from the lines of the roads.　It is further
testified by the complainant and some of his witnesses that
in the use of the main highway at the corner of the cross-
road by those turning from the crossroad into the main
road they were accustomed to turn sharply about that

corner close to the place where the old buildings were located and to pass along that portion of the highway which they now claim to be obstructed by the respondent's building. In view of the testimony that these old buildings were severally used from time to time for many years as places of public resort, one as a liquor and oyster saloon, one as a wheelwright shop, and one later as a blacksmith shop, all of which appear to have been some feet southerly from the line of any old wall claimed to have then existed, it would not be possible to find from this testimony any such evidence of adverse public use of the land belonging to the owners of the buildings and in front of them as would establish the line of the highway at the front of these old buildings. The only inference we are able to draw from this use of the land in front of these old buildings is that the owners who conducted business therein voluntarily left the land in front of their buildings open to the public for their mutual convenience and that the use on the part of the public was not adverse. These buildings were destroyed or removed several years ago and it is claimed by some of the complainant's witnesses that when the respondent built his present structure he set it several feet further toward the northeast and toward or over the line of the highway as it had previously existed and been used by the public. This testimony is not sufficiently definite in itself without the aid of the Mowry survey to locate the line of the public use of the highway at that point with much accuracy; and as we have seen the line given by the Mowry plat is not conclusive.

The respondent testifies that when he erected his present structure he built his front foundation wall upon the foundation wall of the old wheelwright shop or other structure that had been there before and that he has not encroached upon the highway. There is no evidence in the record that respondent's building encroaches upon the crossroad, although it is so alleged in the bill. Neither survey shows any such encroachment nor is there any witness who so claims.

We have gone to this extent into a discussion of the evidence in this case because it seemed to us, upon full consideration of all the testimony both oral and documentary, and of the plats, that it was extremely doubtful whether it has been shown that there is any encroachment on the highway at all. It is plain that it is impossible to find the location according to the report of 1789; it seems to us equally impossible to locate by this testimony the lines of occupation of that portion of the highway here under consideration with such definiteness and precision as to be convinced that there is such encroachment as is claimed by the bill. So far as the plats before us are concerned it is quite evident that the owners of property in the village of Harmony must many years ago have built their walls on such lines and angles as they saw fit for their own convenience without particularly considering the original layout of the highway or attempting except in a general way to conform thereto. There is no part of the road for any considerable distance shown on the Waterman plat where the width across the road from the southwesterly side to the northeasterly side between walls and fences, which indicate occupation lines, shows the precise distance of 3 rods or 49½ feet, which was the width stated in the layout of 1789. The width between occupation lines varies from upwards of 50 feet opposite the now existing wall near Riley Steere's corner to about 45 feet opposite the respondent's property, about 45 feet opposite the northwest corner of the complainant's property, about 43 feet opposite the southeast corner of the complainant's property and about 60 feet between the Hotel Estate on the southerly side of the road and the Harmony Post Office on the northerly side of the road. We can draw no inference from these occupation lines as to what is or should be the true line of the highway as shown by occupation.

The Presiding Justice of the Superior Court in his rescript says: "Upon the testimony we find that the respondent has not encroached upon the street as defined by the origi-

nal layout. We find, however, that the respondent has encroached upon the line of occupation of said street to the extent to which the building of said respondent extends beyond the projection of the old wall, the remains of which still exist just west of the respondent's building and which continue part way into the respondent's cellar." This finding of the Presiding Justice is based solely upon the location of the old wall, and his decree as above recited is based upon the Mowry plat, showing the location of this old wall. For reasons already stated we think it extremely doubtful if there is any such encroachment as is set forth in the decree.

Fortunately, however, we are not called upon to decide this question, because there has, in our opinion, been a failure to justly appreciate the principles of law applicable to the decision of this case.

(1)     If there has been any actual encroachment upon the highway as set forth in the bill such an encroachment is a public nuisance under all the cases hereinafter cited. This bill then is essentially a bill by one owner of land fronting on the highway to abate a public nuisance by injunction. The well settled rule in such cases is thus stated in 29 Cyc. p. 1208, as follows: "VI. Right of Private Individual to Relief Against Public Nuisance. A. General Rule. A public nuisance does not furnish grounds for an action either at law or in equity by an individual who merely suffers an injury which is common to the general public; but an individual who sustains an injury peculiar to himself may have relief against a public nuisance, and is entitled to proceed in equity for the abatement of or an injunction against the nuisance, or to maintain an action at law for damages on account of the special injury which he has received. B. Nature and Extent of Special Injury—1. In General. It is absolutely essential to the right of an individual to relief against a public nuisance that he should show that he has suffered or will suffer some special injury other than that in which all the general public share alike, and the difference between the injury to him and the injury

to the general public must be one of kind and not merely of degree. 2. Substantial Character of Injury. The special injury which will entitle an individual to relief against a public nuisance must be of a substantial character, but it is not necessary that the damage therefrom should be considerable." See also, 22 Cyc. p. 760, 3 a. b.; 1 High. Inj. § 762 (3d ed.); 2 Elliott, Roads and Streets, § 850, § 850a (3d ed.); *Clark* v. *Peckham*, 9 R. I. 455, 468; *Clark* v. *Peckham*, 10 R. I. 35, 38.

In *Clark* v. *Peckham, supra,* this court recognizes the general principle as above set forth as applied to an action at law. (See, also, *Williams* v. *Tripp,* 11 R. I. 447, 453). The same general rule was also recognized in equity, in *Gorton* v. *Tiffany,* 14 R. I. 95, 97.

In this case the question therefore arises whether the complainant has shown that he has suffered any injury "peculiar to himself" or "some special injury other than that in which all the general public share alike," and that "the difference between the injury to him and the injury to the general public" is "one of kind and not merely of degree."

We do not find in the record of this case any evidence that the complainant has suffered any such special injury. In his bill he claims that he has been injured by reason of the respondent's alleged encroachment upon the highway preventing him from using and viewing and from obtaining light and air to which he is entitled by reason of his location on a public highway. There is no evidence from either himself or any other witness to show that his property has been injured in the slightest degree; there is nothing to show that any air or any light is cut off from his premises by reason of the alleged encroachment. The respondent's building stands on the northwesterly side of the crossroad at a distance of upwards of forty feet from the nearest portion of the complainant's land and upwards of 65 feet away from the nearest part of complainant's house. The respondent's building does not encroach upon the crossroad; the end of it nearest the complainant's premises is about 20 feet wide, the

(2) length of it on the main highway is about 50 feet; it is a one-story building, height not shown. No inference can be drawn from its size or location that it even casts a shadow at any time upon the complainant's land, or that it interferes in the slightest degree with the free circulation of the air, so far as the complainant is concerned.

Does the respondent's building prevent the complainant from "using and viewing," as alleged ? Of course the general use of the highway by the complainant for traveling back and forth thereon is only a part of the general public use, to which everyone is entitled; and if there is any actual encroachment, the complainant suffers no special injury differing either in kind or in degree from that suffered by the general public so far as the general use of the highway is concerned. There is no evidence that the alleged encroachment interferes in any way with the complainant's right of access to (3) his property. We think the word "using" in the bill as quoted must be intended to refer either to general use or to access, as to neither of which is there any injury special to him of which the complainant can here complain.

Is there any special injury to complainant's right of view ? No such injury appears. There is nothing to show that he cannot from the front of his land upon the highway see everything upon the highway that he wishes to see or that would be of any value to him to see, or that the view of his land from the highway is cut off in any appreciable degree. If it can be said that there is, by reason of the alleged encroachment, any substantial interference with view, it is an interference which affects the general public using the highway in the same way only in slightly less (4) degree, than it affects the complainant. There is no allegation and no proof that the complainant is carrying on any business or doing anything with or upon his land where view is of special value to him or where the cutting off of his view of the highway or of the view of his premises by travelers thereon in any way causes him any special injury.

No case has been cited on behalf of the complainant and none has come to our attention where an injunction has been granted under any such facts as are disclosed by the present case.

All of the cases cited on behalf of the complainant which are in any way applicable to the question here under discussion show substantial and not merely technical injury to the rights of the complainant party; and all recognize the general principles above set forth. Thus in *Bischof* v. *Merchant's Nat. Bank*, 5 L. R. A. (N. S.) 486 (Neb.), which was a suit to enjoin a public nuisance, it appeared that the properties of the parties with buildings thereon adjoined with no space between and bounded north on a public business street of a city; both buildings were flush with the sidewalk. After a fire the defendant bank made repairs and rebuilt its front next to the plaintiff's building with a portico of steps and pillars extending into the sidewalk about two and a half feet. Plaintiff's building had a glass front used for display of merchandise in the store. It appeared that the portico obscured the view of plaintiff's windows where goods were displayed. It was held that the portico of the bank was a public nuisance and that it caused a special injury to plaintiff, and relief was granted.

*Ackerman* v. *True*, 175 N. Y. 353, was a suit for an injunction and damages, where it was alleged and proved that the defendant whose land immediately adjoined plaintiff's land, had built out into Riverside Drive a solid wall of stone and brick for the front of a building four stories in height and about four feet into the street. It was also in evidence that the plaintiff's estate was worth $15,000 less than it would have been had the defendant not so encroached on the highway. It was held that this injury was peculiar to the plaintiff and in addition to that suffered by the general public, and that she had a right of action therefor and a right to an injunction. Under the New York practice both matters could be prosecuted in one suit.

In *Townsend* v. *Epstein*, 49 Atl. 629 (Md.), 93 Md. 537, it appeared that the defendant's building actually shut off the light from the plaintiff's building so that it was necessary for plaintiffs to use artificial light at a considerable added expense in conducting their business; it was held that they sustained an injury different from that suffered by the public and were entitled to an injunction.

In *First National Bank* v. *Tyson*, 133 Ala. 459 (cited in *Bischof* v. *Merchant's Nat. Bank, supra,* which is a very similar case), it appeared that the properties of Tyson and the bank were immediately adjoining and fronted on a public street; that Tyson's building was a bank and office building; that the bank was constructing a building on its lot and proposed to place on the front of its building four stone columns as ornaments, 16 feet in height and 2 feet more or less beyond the established building line into the street; the bill claimed that this encroachment would be a public nuisance and would damage the complainant "beyond that which is common to the public generally by injuring and depreciating the value of your orator's property and by destroying the symmetry of your orator's building along the highway, which is valuable, and by obstructing the light, air and view necessarily ensuing therefrom, and by depreciating the rental value of your orator's property in that the view of persons going south along said highway north of your orator's building will be cut off from your orator's building," and that valuable tenants would leave and threatened to leave, etc., if the columns encroached. The case was heard in the first instance in the court below upon demurrers to the bill and other pleadings and the court granted a temporary injunction; the defendant bank then answered and incorporated pleas therein and filed demurrers, and thereupon moved to dissolve the temporary injunction. This motion was denied, exceptions to the pleas were sustained, the demurrers to the bill were overruled, and the bank appealed. In the appellate court, after a full discussion of the principles of law applicable to encroachments on

highways as public nuisances and to the rights of private parties to enjoin them where special injury is shown, the court says, p. 475: "We try the case on this appeal, on the pleadings as they are presented, in advance of any evidence taken in the cause. Whether the evidence when taken will, on submission of the case for final disposition, sustain the averments for relief or not, we are not given to know. It is a case as presented, as the court below held, and we think properly, where, everything considered, the complainant was entitled to his injunction, and its continuance to await the final disposition of the cause." The court then very clearly states upon review of authority the right of the owners of land on public highways to the easements of light and air, access and view, as appurtenant to such land; and the gist of the opinion is that so far as the allegations of the bill are concerned, no evidence having then been taken, the complainant appears to have been entitled to an injunction (as granted below) and that "the injunction should await the decision of the case when tried for final decree, on pleadings and proof taken."

This case came again before the Supreme Court of Alabama after final hearing upon pleadings and evidence taken. (*First National Bank* v. *Tyson*, 144 Ala. 457.) It was then found that the evidence failed to show any special injury to the complainant Tyson, except as to interference with his right of view; on that it was found from the evidence that there was a substantial interference with a valuable right, it appearing that the encroachment by the bank upon the sidewalk with the columns and their bases extended beyond the building line of the street 22 to 26 inches, that the properties were immediately adjacent, and the complainant Tyson's property, being used for business purposes, as set forth above, suffered special and peculiar injury by reason of the interference with his easement of view.

We have commented at some length upon the *Tyson* case (which is cited with much approval on complainant's brief) because it shows clearly not only the extent of the

right to the several easements here claimed as appurtenant to the complainant's land, but also because it shows that there must be some evidence of special injury in support of the allegations of the bill to sustain the right to an injunction. It is not sufficient that only the public nuisance alleged in the bill be proved without proof also to sustain allegations of special and peculiar injury to the complainant by reason of such public nuisance.   It is necessary that there be proof of real and substantial special injury in order to warrant an injunction.   The complainant in this case seems to argue that it was not necessary for him to offer any proof of special damage or injury to him; that if it is proved that the respondent has created a public nuisance by encroachment on a public highway, it follows as a matter of course that the complainant has suffered special injury to his easements of light, air and view.   The cases cited above do not support this view and those cases are the typical and most important cases cited on behalf of the complainant.

In 2 Elliott on Roads and Streets (3d ed.), § 850 (quoted in complainant's brief) it is said:   ''In addition to the right of the public to maintain a suit in equity for an injunction, private citizens who are specially injured by an obstruction and interested in preventing its continuance may, upon a proper showing, maintain a suit in equity for an injunction. But unless a special injury is shown, the plaintiff will not be entitled to an injunction.   It has also been held that the injury must be irreparable, or at least not capable of full and complete compensation in damages.   This is no doubt a fair statement of the general rule, but the phrase 'irreparable injury,' is apt to mislead.   *It does not necessarily mean as used in the law of injunctions, that the injury is beyond the possibility of compensation in damages, nor that it must be very great.   And the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages only, often furnishes the very best reason why a court of equity should interfere in cases where the nuisance is a continuous one.*''

The complainant seems to argue from this statement, particularly from that last portion which is italicized on the brief, that it is not necessary to prove any special injury or damage; but the cases cited in the notes in support of the above do not warrant any such conclusion. The cases cited under note 34, in support of the statement that "unless a special injury is shown, the plaintiff will not be entitled to an injunction" have all been examined and all support that statement. Most of them relate to various obstructions of public highways by fences, toll-gates, construction of railways in streets, buildings, etc., and need not be cited in detail.

In one of the cases cited in that note, to wit, the case of *Bigelow* v. *The Hartford Bridge Co.*, 14 Conn. 565, 578, 580, 581, the principles applicable here are so well stated that we quote them as follows: "STORRS, J. This bill cannot be sustained merely on the ground that the difficulty and danger of travelling on said causeway will be increased, by the greater depth and more rapid flow of the water which will be occasioned by the contemplated acts of the *Hartford Bridge Company*, and that therefore said acts will constitute a public nuisance. It is very clear, that a bill in equity will not be entertained for an injunction against a public nuisance, unless it shows that the plaintiff will sustain a special or peculiar damage from it, an injury distinct from that done to the public at large." . . . "Of whatever character it is requisite that the injury complained of should be, in order to lay the foundation for this remedy, it is necessary that it should be a substantial, and not merely a technical, or inconsequential, injury. There must not only be a violation of the plaintiff's rights, but such a violation as is, or will be, attended with actual and serious damage. Even although the injury may be such that an action at law would lie for damages, it does not follow, that a court of equity would deem it proper to interpose, by the summary, peculiar and extraordinary remedy of injunction. 8 *Simons*, 194. It is obviously not fit that the power of that court

should be invoked, in this form, for every theoretical or speculative violation of one's rights. Such an exercise of it would not only be wide from the object of investing those courts with that power, but would render them engines of oppression and vexation, and bring them into merited odium. It is a power which is extraordinary in its character, and to be exercised generally only in cases of necessity, or where other remedies may be inadequate, and even then with great discretion and carefulness. It is a salutary, and indeed, a necessary power, when confined within those safe limits in which it has been exercised; but capable of being made an instrument of oppression, and therefore to be extended, if at all, with great circumspection." . . . "Assuming that the nature of the injury, in this case, is such, that, if it were sufficiently important in point of magnitude, it would warrant the interposition of the court by injunction, and that the existence of the danger is shown with such certainty that there would be no objection, on that ground, to granting the relief sought, we are clearly of opinion, without dwelling on the several particulars of the finding on this subject, that the extent of the damage to be apprehended in this case, is wholly insufficient to justify us in applying the peculiar and extraordinary remedy which is sought. The decay and depreciation of the property, the repairs which may be thereby rendered necessary, and the inconvenience which may ensue to the plaintiff, are found to be very small, not capable of appreciation, and not such as will materially lessen the intrinsic value of the plaintiff's property. We find no precedent, and discover no reason, to warrant the granting of an injunction for an apprehension of injury of such inconsiderable magnitude."

As to that portion of said Section 850 above quoted which the complainant has emphasized by italics, it bears no such construction as he would seem to claim. None of the cases cited in note 37 sustain the proposition that there need be no proof of *special injury* in such cases, or are in anywise in conflict with the previous proposition that

"unless a special injury is shown, the plaintiff will not be entitled to an injunction." On the contrary, all of the cases cited in note 37, show both allegations of special injury and proof thereof except where demurrers have admitted the allegations of the bill. All that we conceive that portion of the section to mean is, that, although special injury to the plaintiff's rights must be shown, it need not in all cases be a very great injury; and that there are some cases where the injury is such that proof of pecuniary damage may be difficult or that damages recoverable at the time of suit may be only nominal, and that successive suits would need to be brought to protect the plaintiff's rights; and that therefore equity would properly interpose to protect plaintiff's rights and to prevent multiplicity of suits at law. This note cites the two cases of *First Natl. Bank.* v. *Tyson, supra,* where, as we have already shown, the defendant's building did substantially interfere with the plaintiff's right of view as appurtenant to a business block on a business street in a city. and where the two properties were immediately adjacent to each other; although it did not appear that there was proof of a direct pecuniary loss which could be accurately figured in money. The case of *Newell* v. *Sass,* 142 Ill. 104, was for an injunction to restrain obstruction of a private gangway appurtenant to complainant's estate; it was found as a fact that the threatened obstruction would work irreparable and permanent injury to complainant's rights in the gangway, although it does not appear that pecuniary *damages* were proved; and a decree of injunction was granted, and affirmed on appeal.

The cases of *Clowes* v. *Staffordshire, &c., Co ,* L. R. 8 Ch. 125; *Wilts, &c., Co.* v. *Swindon, &c., Co.,* L. R. 9 Ch. 451, and *Webb* v. *Portland Mfg. Co.,* 3 Sum. (U. S.) 189, cited in this note were cases of interference in various ways with complainants' water rights on streams; in these cases it appeared that the interferences worked a substantial injury to complainants' right, not easily to be estimated in pecuniary damages, but that the interference, if allowed to

continue, might ripen into a right by adverse user; and that nominal damages could be recovered at law in recognition and support of complainants' rights in suits brought from time to time; and that equity would interpose by injunction to save complainants' rights and to avoid the necessity of successive suits at law.

The case of *Townsend* v. *Epstein,* 93 Md. 537, cited in this note, has already been referred to and analyzed, *supra,* and needs no further comment. The other cases cited in the note refer to injuries other than such as are here in question and have no special application. They are however in no sense opposed to the principle hereinbefore set forth.

The decree in this cause, hereinbefore fully set forth, so far as it finds in fact that the respondent's building encroaches upon the public highway, known as the Glocester Turnpike Road, is founded partly upon the finding of the court below as set forth in its rescript, "that the respondent has encroached upon the line of occupation of said street to the extent to which the building of said respondent extends beyond the projection of the old wall, the remains of which still exist just west of the respondent's building and which continue part way into the respondent's cellar." There was some evidence before the court as to such location of this old wall. But when we read the rest of the decree, we see that it also finds that the building has also encroached upon the crossroad, as to which there is no evidence either orally or by plat; we also see that the findings of said decree as to interference with light and air are based solely upon the assumption that, because of such encroachment, there is such an interference with light and air as to warrant an injunction, although there is no testimony to any substantial special injury in those respects; while the findings of the decree with regard to interference with use and view, are findings based only upon a slight interference with use and view, similar in kind to and only varying in degree from such interference with use and view as are suffered, if at all, by the general traveling public, who use the highway.

When we come to the injunctive portion of the decree we find that the distances given respectively of 4.7 feet on the northeasterly corner of said building and 8.7 feet on the southeasterly corner of said building are derived solely from the line drawn upon the Mowry plat, as to which we have already shown that there is grave doubt as to its accuracy. Waiving the question whether there is any encroachment upon the public highway and if so how much, as to which we already expressed grave doubts in view of the evidence, we think this decree must be set aside for the reason already set forth, that we do not find in the record of the case before us any evidence of such injury to the complainant's rights of a special character peculiar to him and differing in kind from the injury to the public, if any there be, as to warrant an injunction.

The respondent's appeal is sustained; the decree entered on the 4th day of June, 1915, is reversed; and the cause is remanded to the Superior Court, sitting in Providence County, with direction to enter its decree dismissing the bill, and awarding costs to the respondent.

*Waterman & Greenlaw*, for complainant.
*Charles E. Tilley*, of counsel.
*Frank Steere, Washington R. Prescott*, for respondent.